*State of Maryland v. Maxim Smith*, No. 1708, September Term, 2024.  Opinion by Graeff, J.

**FOURTH AMENDMENT—*TERRY* FRISK—INITIATION OF FRISK**

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.  The Supreme Court has held that a *Terry* stop, a brief detention of a person, is reasonable when the officer has reasonable suspicion that a person has committed or is about to commit a crime.  A *Terry* frisk, a protective pat-down, is reasonable to protect the officer when the officer reasonably believes that the person stopped is armed and dangerous.

During a traffic stop, the police may ask questions unrelated to the justification for a stop, so long as those inquiries do not measurably extend the duration of the stop.  The suspect is not obligated to respond to those questions, and unless the answers given provide the officer with probable cause to arrest the suspect, the suspect must then be released.

A typical frisk, often described as a pat-down of the outer clothing, is a physical intrusion on an individual's person, and in that situation, there is no question that a search has begun.  Although there can be situations where a search occurs without physical contact, that did not occur here.  A frisk occurs only if a police officer commits a physical trespass on a constitutionally protected area or otherwise violates the person's reasonable expectation of privacy.

Officer Ruiz's questions to appellee, asking if appellee had any weapons or if he minded if Officer Ruiz patted him down, did not amount to a physical intrusion, and they did not violate appellee's reasonable expectation of privacy by requiring him to expose a part of his body or his effects that were not otherwise exposed.  The circuit court erred in granting appellee's motion to suppress on the ground that Officer Ruiz did not have the requisite suspicion to support a *Terry* frisk.

Circuit Court for Montgomery County
Case No. C-15-CR-24-000507

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1708

September Term, 2024

_____

STATE OF MARYLAND

v.

MAXIM SMITH

_____

Graeff,
Berger,
Kehoe, Christopher B.,
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: March 28, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal involves the State's challenge to the ruling of the Circuit Court for Montgomery County suppressing cocaine seized from the person of Maxim Smith, appellee, and a firearm found in appellee's vehicle. The appeal was brought pursuant to Md. Code Ann., Cts. & Jud. Proc. ("CJ") § 12-302(c)(4)(iv) (2024 Supp.), which requires us to render our decision within 120 days of the filing of the record in this Court. The record was filed on December 9, 2024, and therefore, our decision must be rendered by April 8, 2025.

The question presented for this Court's review[1] is as follows:

> Did the circuit court err in granting the motion to suppress because the police did not have the requisite suspicion to conduct a *Terry* frisk?

For the reasons set forth below, we shall reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 28, 2024, Officer Antonio Ruiz, a member of the Montgomery County Police Department, recovered cocaine on appellee's person, as well as a loaded gun, with an obliterated serial number, in his vehicle. On August 29, 2024, appellee filed a motion to suppress this evidence. He argued that the stop and frisk were illegal, and any evidence recovered thereafter should be suppressed as the fruits of an unlawful search.

---

[1] The State's question presented was: "Did the circuit court wrongly grant the motion to suppress because police had probable cause to arrest Smith and search him and his vehicle incident to arrest?" Based on our review of the record here, including the transcript, the court's ruling and the parties' briefs, we have revised the question presented to more accurately reflect the issue we must address in determining the propriety of the circuit court's ruling.

On September 13, 2024, the circuit court held a hearing on the motion. Appellee entered Defense Exhibit 1 into evidence, which contained five videos, three from Officer Ruiz's body camera and two taken from inside his patrol car.

Officer Ruiz, the only witness to testify, stated that he observed a vehicle, which was driven by appellee, commit several traffic violations. First, the vehicle made an abrupt lane change, coming within a foot of the vehicle traveling in front of it. Second, the vehicle drove above the posted speed limit. Finally, the vehicle's front windshield was tinted to the point of being "blacked out," and Officer Ruiz could not see inside the vehicle. Officer Ruiz observed the traffic violations from a marked patrol vehicle.

After observing the violations, Officer Ruiz pulled behind the vehicle and followed it as it made several turns. Ultimately, the vehicle pulled into a Marathon gas station,[2] and Officer Ruiz pulled in behind appellee's vehicle. At that point, Officer Ruiz briefly turned on the patrol car's lights and siren. He exited the patrol car, approached the driver's door of appellee's vehicle, and greeted appellee. Appellee acknowledged that he had been speeding, stating that he thought he was driving approximately 45 miles per hour in a 30-mile-per-hour zone.

Appellee told Officer Ruiz that he was heading to a laundromat and had stopped for gas. Officer Ruiz noticed, however, that appellee's gas gauge was more than three quarters full, and appellee's travel route to get to the laundromat "was inconsistent with the route"

---

[2] At some point, Officer Ruiz ran the license plate and determined that the vehicle was not stolen and there were no issues with the vehicle's registration.

that he had just observed appellee take. Appellee could not have entered the laundromat "from the route that he was taking."

Officer Ruiz asked for appellee's license and registration and told appellee that, if everything checked out, he probably would just give appellee a warning. During this interaction, appellee "appeared incredibly nervous, on edge, like he wanted to get out of the situation."

Officer Ruiz asked appellee to step out of the vehicle and walk with him to the patrol car while he processed the stop, noting that he "was there alone" conducting the stop. When appellee stepped out of his vehicle, Officer Ruiz saw a container of alcohol in the door pocket of appellee's vehicle. Officer Ruiz's body camera recorded him asking appellee if he "was drinking that Corona while" driving. Appellee responded: "Yes." Officer Ruiz did not ask how much appellee had to drink or at what time appellee had consumed the alcohol.

Officer Ruiz asked appellee if he had any weapons on him, and appellee said: "I don't have--," stopped speaking, and then said "no, no guns." Officer Ruiz testified that he responded: "[O]kay, you were clearly going to say that you had something on you. What were you -- what do you have on you? And [appellee] stated that he had drugs on him." He said he had cocaine on him. At that point, Officer Ruiz had not made any physical contact with appellee.

Officer Ruiz's body-camera gives further detail on the interaction. After Officer Ruiz observed the alcohol in the car, he asked if appellee had "anything else illegal in the car" or any weapons on him. Appellee said that he did not. The following then occurred:

3

Officer Ruiz: Do you mind if I pat you down?

Appellee: No [appellee slightly raises his arms and lowers them one second later]

Officer Ruiz: Do you mind if I pat you down for weapons? You don't have any guns on you, nothing like that?

Appellee: I don't, I don't have guns. [appellee turns and raises his arms again]

Officer Ruiz: Okay what else – what do you have? [appellee lowers his arms] What, what's on you—

Appellee: I have, I have, I have coke on me.

Officer Ruiz: Okay what do you have?

Appellee: I'm sorry. I'm sorry man, please don't lock me up.

* * *

Officer Ruiz: Okay that's fine dude, we can deal with it, what do you have?

Appellee: I have some cocaine on me.

Officer Ruiz: Alright that's fine. Well I appreciate you being honest with me. Here just turn around for me. Just because I'm alone right here, I'm going to place you in handcuffs, okay?

Officer Ruiz handcuffed appellee, stating: "You're not under arrest dude, I'm just going to tell you that right now . . . you're just being detained." Officer Ruiz testified that he handcuffed appellee because he did not know what else appellee had on his person, noting that "there's a nexus between guns and drugs," he did not know if appellee actually "had any weapons on him," and he did not know if appellee "was going to stand back in a safe place, you know, secured." Officer Ruiz testified that appellee was not acting aggressively toward him, and he was polite and respectful.

4

After handcuffing appellee, Officer Ruiz requested backup and walked appellee toward the patrol car. He then asked appellee which pocket the cocaine was in, appellee told him, and he retrieved three baggies of cocaine from appellee's pocket. Officer Ruiz testified that he decided to arrest appellee after finding the cocaine in his pocket.

After backup arrived, Officer Ruiz searched appellee's car. He discovered a loaded, semiautomatic Glock handgun in the rear pocket of the driver seat.[3] The serial number on the firearm was obliterated. Officer Ruiz did not issue any traffic citations to appellee, but he issued warnings. Officer Ruiz then clarified, in response to the court's questions, that he told appellee that he was being detained when he brought appellee out of the car, and decided to arrest him when he found the drugs in appellee's pocket.

In arguing the motion to suppress, appellee relied on *Terry v. Ohio*, 392 U.S. 1 (1968). Appellee argued that: (1) Officer Ruiz lacked probable cause to conduct the initial stop; (2) the initial stop turned into a second stop when Officer Ruiz ordered appellee out of the vehicle; (3) the search of appellee was an unlawful *Terry* frisk because Officer Ruiz lacked reasonable and articulable suspicion that appellee was armed and dangerous; and (4) the State failed to show a legitimate arrest because it was not clear at what point appellee was arrested and the police did not conduct a field test of the substance found. In his opening statement, defense counsel argued that Officer Ruiz's questioning whether he

---

[3] Officer Ruiz testified that he recovered the gun from the rear driver seat "map pocket." The body camera records Officer Ruiz recovering the gun from the rear passenger seat map pocket. This discrepancy is not relevant to the issue raised on appeal.

could pat down appellee or whether appellee had weapons on him triggered the *Terry* frisk, and the *Terry* frisk was illegal.

The State argued, as relevant to the issue on appeal, that the *Terry* frisk was justified under the totality of the circumstances. The prosecutor noted that Officer Ruiz saw an individual making an unsafe lane change, who then goes "to a gas station, where the pump that the defendant pulls up to is opposite from the side where he can actually do the refueling." When the officer spoke to appellee, he noticed that appellee was nervous, and when appellee stepped out of the vehicle, Officer Ruiz saw an open container of alcohol, which appellee admitted to drinking while driving. The officer then asked what else appellee had on him. In response to the court's question why the officer asked appellee that question, the prosecutor stated that it was necessary to look at the totality of the circumstances, and those circumstances justified a *Terry* frisk. He argued that, in response to the question whether appellee had something other than guns on his person, appellee stated that he had cocaine, and the officer then had probable cause to arrest appellee and search his person, as well as the vehicle in a place where contraband can be found.

In rebuttal, defense counsel argued, among other things, that the additional question asking if appellee had anything on him violated *Terry*.

On October 21, 2024, the circuit court issued a written memorandum opinion granting the suppression motion. The court listed the issues as: "1) whether Officer Ruiz had reasonable articulable suspicion to stop [appellee]; 2) whether there was a second stop; and 3) whether Officer Ruiz had reasonable articulable suspicion to conduct a *Terry* pat-down on" appellee. It found that Officer Ruiz had reasonable articulable suspicion to stop

6

appellee, and there was only one stop. The court concluded, however, that Officer Ruiz lacked reasonable articulable suspicion to conduct a *Terry* pat-down of appellee. It stated that Officer Ruiz did not testify to anything that supported a *Terry* pat-down, i.e., evidence that appellee was armed and dangerous. Although appellee was nervous and admitted to drinking from the open container of beer in his vehicle, "Officer Ruiz did not testify that he had any reason to believe that Defendant was armed or that the officer feared for his safety." The court stated that "this was not a situation where Officer Ruiz suspected that [appellee] had drugs on him and therefore the officer had reasonable articulable suspicion to conduct a pat-down" given the "recognized connection between drugs and guns." Rather, "[i]n this case, Officer Ruiz had no knowledge of any drugs until he asked [appellee] if he had any weapons and after [appellee] denied having weapons, asked [appellee] what else he had."

The court found that Officer Ruiz violated appellee's Fourth Amendment rights when, without reasonable suspicion to conduct a *Terry* pat-down, he questioned appellee about weapons, asked whether he could pat appellee down, and when appellee denied having weapons, asked appellee what else he had, "which led to [appellee's] admission that he had drugs on him." Accordingly, the court granted appellee's motion to suppress "all evidence related to [appellee's] arrest on March 28, 2024."

This appeal followed.

**STANDARD OF REVIEW**

This Court has described the applicable standard of review for a suppression motion as follows:

7

When reviewing a circuit court's denial of a motion to suppress evidence, we are "limited to the record developed at the suppression hearing." *Moats v. State*, 455 Md. 682, 694, 168 A.3d 952 (2017). "We review the evidence and the inferences drawn therefrom in the light most favorable to the prevailing party." *Thornton v. State*, 465 Md. 122, 139, 214 A.3d 34 (2019). As a "mixed question of law and fact[,]" we accept "the hearing court's finding of fact unless they are clearly erroneous" but "review the hearing judge's legal conclusions *de novo*[.]" *Id.* (citations omitted). Thus, we independently evaluate without deference to the circuit court whether a police officer's conduct violated the constitutional rights of the defendant. *Sizer v. State*, 456 Md. 350, 362, 174 A.3d 326 (2017).

*Brown v. State*, 261 Md. App. 83, 92 (2024) (alterations in original) (quoting *Rodriguez v. State*, 258 Md. App. 104, 114-15 (2023)).

**DISCUSSION**

**A.**

**Parties' Contentions**

The State contends that the circuit court erred in granting appellee's motion to suppress on the ground that Officer Ruiz did not have reasonable suspicion to conduct a *Terry* frisk. It asserts that no *Terry* frisk occurred, and the court erred by considering only whether the search of appellee would have been justified as a *Terry* frisk for weapons. The State argues that no Fourth Amendment event occurred here until after appellee's admission that he had cocaine on his person, at which point Officer Ruiz had probable cause to arrest appellee. The subsequent searches of appellee and his car, therefore, were valid as a search incident to arrest. It further asserts, in the alternative, that the gun inevitably would have been discovered pursuant to a lawful inventory search.

Appellee contends that the circuit court properly granted his motion to suppress the "fruits of an unlawful frisk." He argues that the State's focus on his "admission that he

8

possessed cocaine is misplaced," asserting that "[t]he relevant Fourth Amendment violation took place moments earlier, when Officer Ruiz asked [appellee] if he had any weapons or other contraband on his person and immediately asked to pat [him] down." Appellee asserts that "[t]hose questions initiated the *Terry* frisk," and "were the functional equivalent of a frisk," and because Officer Ruiz did not have reasonable, articulable suspicion that appellee was armed and dangerous, the court properly suppressed "the fruits of this unlawful frisk: his admission that he possessed cocaine, and the cocaine and handgun recovered pursuant to a search incident to arrest."[4]

**B.**

**Analysis**

"[T]he Fourth Amendment to the United States Constitution prohibits 'unreasonable' searches and seizures." *Pacheco v. State*, 465 Md. 311, 320 (2019) (quoting *State v. Johnson*, 458 Md. 519, 533 (2018)). "Thus, in determining whether a search is constitutional, a court must determine if it is reasonable." *Brown*, 261 Md. App. at 92. A determination whether a search is reasonable or unreasonable requires "balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry*, 392 U.S. at 21. Generally, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—

---

[4] At this point in the litigation, appellee concedes that Officer Ruiz's initial stop of appellee was proper, that only one stop occurred, and that Officer Ruiz lawfully ordered appellee out of his vehicle.

9

subject only to a few specifically established and well-delineated exceptions." *Brown*, 261 Md. App. at 93 (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)).

One exception to the general rule was established in *Terry*, where the United States Supreme Court "considered whether an investigatory stop (temporary detention) and frisk (patdown for weapons) may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). A *Terry* stop "permits an officer to stop and briefly detain an individual" when the officer has "reasonable suspicion that a person has committed or is about to commit a crime." *Bailey v. State*, 412 Md. 349, 363 (2010) (quoting *Swift v. State*, 393 Md. 139, 150 (2006)). Reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped of breaking the law." *In re D.D.*, 479 Md. 206, 231 (2022) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)).

A *Terry* frisk is "a protective pat-down," and for purposes of the Fourth Amendment, it is considered a search. *Lockard v. State*, 247 Md. App. 90, 102 (2020). *See Ames v. State*, 231 Md. App. 662, 679 (2017) (characterizing a frisk as a "junior varsity search"). A frisk is permitted for "the protection of the officer making the stop." *Id.* (emphasis omitted) (quoting *Gibbs v. State*, 18 Md. App. 230, 241 (1973)). "[T]o proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Johnson*, 555 U.S. at 326-27. *Accord In re D.D.*, 479 Md. at 242 (a *Terry* frisk, which protects "the police officer and bystanders from harm," must be supported by reasonable articulable suspicion that the suspect is armed and dangerous) (quoting *Sellman v. State*, 449 Md. 526, 542 (2016)).

There is no challenge on appeal regarding the propriety of the initial stop. Although appellee raised multiple issues below, the dispute on appeal involves the propriety of the search of appellant's person. More specifically, it involves when the search was initiated.

Before turning to that issue, we note that, during a traffic stop, the police are permitted to take various actions incident to the traffic stop. As the United States Supreme Court has noted, traffic stops are "especially fraught with danger to police officers." *Johnson,* 555 U.S. at 330 (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)). The Court has stated that it helps to minimize the risk of harm to both the police and the occupants of a stopped vehicle "if the officers routinely exercise unquestioned command of the situation." *Id.* (quoting *Maryland v. Wilson*, 519 U.S. 408, 414 (1997)). Thus, during a traffic stop, a police officer may order the driver and any passenger to exit the vehicle. *Wilson*, 519 U.S. at 410.

The police also may ask questions unrelated to the justification for a stop, "so long as those inquiries do not measurably extend the duration of the stop." *Johnson,* 555 U.S. at 333. *Accord United States v. Taylor*, 60 F.4th 1233, 1239-40 (9th Cir. 2023) (officer asking a person pulled over for a traffic stop if he has any weapons is an ordinary inquiry incident to a traffic stop, i.e., a "negligibly burdensome precaution" that the officer may take in "the name of officer safety"), *cert. denied*, 144 S. Ct. 828 (2024); *United States v. Buzzard*, 1 F.4th 198, 203-04 (4th Cir.) (asking occupants of a car during a traffic stop whether there was anything illegal in the car was constitutional because it was related to officer safety and did not prolong the stop), *cert. denied*, 142 S. Ct. 728 (2021); *United States v. Childs*, 277 F.3d 947, 954 (7th Cir.) (reasonable for officers to ask "persons stopped for traffic

11

offenses whether they are committing any other crimes," noting that "persons who do not like the question can decline to answer"), *cert. denied*, 537 U.S. 829 (2002); *United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007) (asking driver during traffic stop whether he had any weapons or contraband did not appreciably extend the traffic stop and was constitutional). The Supreme Court of Maryland has made clear that a suspect "is not obligated to respond" to questions asked during a *Terry* stop, and "unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Collins v. State*, 376 Md. 359, 368 (2003) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)).

Among the questions the officer is permitted to ask during a *Terry* stop is whether the person will consent to a search of his person. *Id.* at 372. The person asked, however, has the right to refuse the request. *Id.*[5]

Here, there is no dispute that Officer Ruiz's questions did not measurably extend the stop. A review of the body-camera footage shows that the lapse of time from when Officer Ruiz asked appellee if he had "anything else [other than the bottle of alcohol] illegal in the car" to when appellee first stated that he had "coke" on his person was approximately 12 seconds. Another six seconds passed until appellee again stated that he had cocaine on

---

[5] The parties indicate that appellee refused consent for a pat-down, but the video shows that Officer Ruiz asked appellee if he minded if Officer Ruiz patted him down. Appellee said no and started to lift his arms. *See generally Scott v. State*, 247 Md. App. 114, 132-33 (2020) (discussing the totality of the circumstances test for determining whether consent to search during a traffic stop is voluntary). The State, however, does not rely on consent as justification for the retrieval of the cocaine, and the circuit court did not address whether appellee consented to a pat-down. We similarly will not consider that issue.

him. Appellee concedes in his brief that the "questions did not constitute an unlawful second stop or prolong the initial stop."

The issue here is whether the questioning was the functional equivalent of a *Terry* frisk. The circuit court appeared to find, and appellee argues, that the questions asked by Officer Ruiz, whether appellee had weapons on his person and if he minded if the officer conducted a pat-down, initiated a *Terry* frisk, which required that Officer Ruiz have reasonable suspicion to believe that appellee was armed or dangerous. The court concluded that Officer Ruiz did not have the requisite reasonable suspicion, and the State has not challenged that determination on appeal. Rather, the State contends that the questioning did not constitute a frisk, and there was no search until after appellee stated that he had cocaine, at which point, the officer had probable cause to arrest appellant and conduct the subsequent searches incident to arrest.

Thus, the only question on appeal is when the search began. Did the search begin when Officer Ruiz asked appellee if he had any weapons and if he could conduct a pat-down because those questions were "the functional equivalent of a frisk"? If the answer to that question is yes, as the circuit court found, we affirm the decision to suppress. If the answer is no, we reverse and remand to the circuit court for further proceedings.[6]

The United States Supreme Court has noted that there are two tests to determine whether police conduct constitutes a "search" under the Fourth Amendment. *United States*

---

[6] We note that, although the issue presented here was raised below, there was only a cursory discussion of the issue, and the circuit court did not have the benefit of the more extensive discussion, including relevant case law, set forth on appeal.

13

*v. Jones*, 565 U.S. 400, 404-06 (2012). First, was there a "physical intrusion" on a "constitutionally protected area"? *Id.* at 404-05, 406 n.3.[7] Second, was there a violation of a person's "reasonable expectation of privacy"? *Id.* at 406.

A frisk, which often is described as "a pat-down of the outer clothing" to check for weapons, *Bailey*, 412 Md. at 368, is a physical intrusion on an individual's person. Therefore, it is a search under the Fourth Amendment. *See United States v. Weaver*, 9 F.4th 129, 141-42 (2d Cir. 2021) (*en banc*) (under the physical intrusion standard, a search occurs when an officer's hands physically contact the person being frisked). *Accord Thornton*, 465 Md. at 145 n.14 (frisk had begun when officer touched the suspect). There is no question that appellee was subjected to a search when Officer Ruiz touched his person and retrieved the cocaine from his pocket. The question here is whether appellee was subjected to a search prior to that time.

Several courts have addressed whether an officer can initiate a *Terry* frisk before making physical contact with a person. They have come to different conclusions.

In *Doornbos v. City of Chicago*, 868 F.3d 572, 581-82 (7th Cir. 2017), the United States Court of Appeals for the Seventh Circuit addressed the issue in the context of holding that the district court erred in instructing a jury in a civil case alleging excessive force on the standard to conduct a *Terry* frisk. The Court held that, to determine when a frisk begins, the court determines "when a reasonable person would have believed that the search was

---

[7] The Court specifically noted that the Fourth Amendment protects people's "persons, houses, papers, and effects." *United States v. Jones*, 565 U.S. 400, 404 (2012) (quoting U.S. Const. amend. IV).

14

being initiated." *Id.* at 581. It determined that the officer initiated the frisk when he stretched out his arm to conduct a frisk. *Id.*

In *United States v. Freeman*, 740 F. Supp. 3d 422, 430 (D. Md. 2024), the court stated that an officer's order to a suspect to stand facing the vehicle with his hands on top of the vehicle did not constitute the initiation of a frisk. In that case, however, the officer immediately asked Freeman if he had any objects on him that could "poke, stick me, [or] cut me[?]" *Id.* at 427. The court held that, under the facts of that case, the question was the initiation of the process to determine if Freeman was armed and dangerous and was "practically inseparable from the pat-down itself." *Id.* at 430-31 (quoting *United States v. Wetmore*, 560 F. Supp. 3d 591, 610 (D.N.H. 2021)). Thus, the court held that the frisk began when the police asked Freeman whether he had any sharp objects that could hurt the officer, and it would not consider Freeman's admission, in response to that question, in determining whether the officer had the requisite suspicion to justify a *Terry* frisk. *Id.* at 431. *Accord Wetmore*, 560 F. Supp. 3d at 607 (officer's instruction to suspect to "face and put his hands on" his vehicle, coupled with statement that he was going to search the suspect, marked the beginning of the search).

Appellee relies on *Doornbos* for the proposition that a *Terry* frisk begins when a reasonable person would have believed that the search was being initiated. He asserts that the questions constituted a frisk because they "communicated that the physical component of the pat-down was imminent," and his action in response to the question whether he minded if the officer patted him down, i.e., raising his arms, indicated that he understood that a frisk was beginning.

15

Other courts, however, have rejected the approach that a frisk begins when a reasonable person would believe that the search was initiated. For example, the United States Court of Appeals for the Second Circuit has taken a different approach. In *Weaver*, 9 F.4th at 141-44, the Court addressed whether a police officer's verbal directive to a suspect to stand at the rear of his car "with his hands on the car trunk and his feet spread apart" constituted a search. It held that it did not, and only at the point that the officer began to physically pat down Weaver's clothes did he conduct a Fourth Amendment search. *Id.* at 144-45.

The Court held "that a police officer's verbal directives to a suspect do not transform a 'stop' into a 'search' unless the officer committed a physical trespass into a constitutionally protected area or otherwise violated the person's reasonable expectation of privacy." *Id.* at 144. The Court explained that neither the officer's

> verbal command to place Weaver in a position where a frisk might occur, nor his as-yet-unexecuted intention to conduct a frisk, produced any invasion of a private and constitutionally protected area, whether based on physical trespass or a reasonable expectation of privacy. Officer Tom had not yet placed his hands anywhere on Weaver's person where a weapon might be detected and, when Weaver positioned himself at the back of the car, he did not reveal anything not already exposed to the public.

*Id.* at 142.

The Court recognized that, under the Fourth Amendment, a person is deemed to be "seized" if "a reasonable person would have believed that he was not free to leave." *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). It stated, however, that "the search context is different," explaining: "The question is not whether a reasonable person would have believed that he was being searched. The inquiry focuses instead on

16

whether the police committed a physical trespass into a protected area, or whether they otherwise violated the person's reasonable expectation of privacy." *Id.* Because the officer's order "constituted neither a trespass nor such an intrusion," it did not constitute a search. *Id.*

The Court did recognize the possibility that, "in certain circumstances, a police officer might effectuate a search through a verbal command, without physically touching a person." *Id.* at 142 n.52. It reiterated, however, that a "verbal command itself" cannot constitute a search "if it does not result in a trespass or a violation of a reasonable expectation of privacy." *Id.*

Similarly, in *Commonwealth v. Clemens*, 66 A.3d 373, 381-82 (Pa. Super. Ct. 2013), the Court held that an officer's request for Clemens to stand up and turn around so the officer could pat down Clemens for officer safety, and Clemens' compliance with the demand, did not constitute initiation of a frisk. In that case, similar to the present case, after the officer's verbal command, but before the officer touched Clemens, the officer became aware that Clemens was in possession of drugs, giving the officer probable cause to arrest and perform a search incident to arrest. *Id.* at 381.

In concluding that the verbal order did not constitute a frisk, the court looked to dictionary definitions. It stated:

> Indeed, by its very definition, the term "frisk" requires tactile contact. *See* BLACK'S LAW DICTIONARY 692 (8th ed. 2004) (defining a "frisk" as "[a] **pat-down search** to discover a concealed weapon.—Also termed *pat-down*.") (emphasis added) (italics in original); MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 502 (11th ed. 2003) (defining the noun "frisk" as "an act of frisking" and the transitive verb "frisk" as "to

17

search (a person) for something (as a concealed weapon) by running the hand rapidly over the clothing and through the pockets")[.]

*Id.* at 382. The Court further relied on language in *Terry*, 392 U.S. at 30, noting that *Terry* defined a frisk as an officer's "carefully limited search of the outer clothing of [an individual] in an attempt to discover weapons which might be used to assault [the officer]." *Id.* (alterations in original) (quoting *Terry*, 392 U.S. at 30). Accordingly, the court concluded that the officer's verbal order did not constitute a frisk. *Id.*

After reviewing all the cases, we conclude that the better-reasoned view is that set forth by the court in *Weaver*. We hold that a frisk, like any search, is committed only if the officer commits a physical trespass on a constitutionally protected area or otherwise violates the person's reasonable expectation of privacy. As indicated, the typical pat-down frisk constitutes a physical intrusion, and in that situation, there is no question that a search has begun.

As appellee notes, however, there can be situations where a search occurs "without physical contact." For example, in *Epps v. State*, 193 Md. App. 687, 714-15 (2010), this Court addressed the propriety of an order by the police for Epps to lift his shirt, which revealed a plastic baggie of drugs. There was no question in that case that the order was a search because the order to lift the suspect's shirt, unlike the questions here, caused an intrusion on his reasonable expectation of privacy by requiring Epps to expose a part of his body that was not otherwise exposed. The issue discussed on appeal was whether the order to Epps to lift his shirt went beyond the limited scope of a frisk because "the intrusion" was not necessary to "detect the presence of weapon." *Id.*

18

Similarly, in *McDowell v. State*, 407 Md. 327, 338-42 (2009), there was no dispute that an officer's order to McDowell to open a gym bag so the officer could see the contents inside was a search. Rather, the issue was whether the State showed that the officer used the least intrusive means to determine whether the suspect was armed and dangerous. *Id.* at 341. Because the officer gave no "reason why a pat-down might not suffice," the Court held that the State failed to show that the search was reasonable. *Id.*

In both those cases, the verbal order required the suspect to expose areas in which the suspect had a reasonable expectation of privacy. That is not the situation here. In this case, the officer merely asked appellee questions, i.e., if he had any weapons or contraband on his person and if appellee minded if the officer conducted a pat-down of his person. These questions did not amount to a physical intrusion, and they did not violate appellee's reasonable expectation of privacy by requiring him to expose a part of his body or his effects that were not otherwise exposed.

Appellee contends that the questions did violate his reasonable expectation of privacy because, once Officer Ruiz asked if he had any weapons, he "had no choice but to answer," and when Office Ruiz asked if he could conduct a pat-down, he "had no choice but to raise his arms and acquiesce." As we have discussed, *supra*, he did have a choice to refuse the requests. *See Collins*, 376 Md. at 368, 372.

19

Officer Ruiz's questions to appellant did not constitute the functional equivalent of a frisk, and they did not initiate a search in this case.[8] Accordingly, the circuit court erred in suppressing the evidence on the ground that Officer Ruiz did not have the requisite suspicion to support a *Terry* frisk. We shall reverse and remand for the circuit court to address other issues raised in the motion to suppress that still need to be resolved, including whether appellee's admission to the possession of cocaine gave Officer Ruiz probable cause to arrest and conduct a search of appellee's person and vehicle incident to arrest.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

[8] At oral argument, counsel for appellee argued, for the first time, that a frisk occurred here because, in addition to the questioning, the officer put his hands near appellee's body, prior to appellee's admission that he had cocaine. Based on our analysis, the officer's conduct in reaching toward appellee, after asking if he minded if the officer patted him down, did not constitute a frisk because, at that point, there was no physical intrusion or violation of appellee's reasonable expectation of privacy.

20